AB:NB/JS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

SANTIAGO HELENA and
RESNY NUNEZ,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

C O M P L A I N T

(21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D);
 18 U.S.C. § 2)

20-MJ-365

EASTERN DISTRICT OF NEW YORK, SS:

       MARTIN K. MARINEZ, being duly sworn, deposes and states that he is a Task Force Officer with the Drug Enforcement Administration, duly appointed according to law and acting as such.

       On or about May 11, 2020, within the Eastern District of New York and elsewhere, the defendants SANTIAGO HELENA and RESNY NUNEZ, together with others, did knowingly and intentionally possess with intent to distribute a controlled substance, which offense involved a substance containing marijuana, a Schedule I controlled substance.

       (Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(D); Title 18, United States Code, Section 2)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I am a Task Force Officer with the Drug Enforcement Administration ("DEA") and have been involved in the investigation of numerous cases involving drug trafficking, including marijuana investigations. I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file; and from reports of other law enforcement officers involved in the investigation.

2. On May 11, 2020, the defendants SANTIAGO HELENA and RESNY NUNEZ arrived together at John F. Kennedy International Airport in Queens, New York, aboard American Airlines flight number 2 from Los Angeles, California.

3. Law enforcement agents observed each man carrying two large pieces of luggage through the airport terminal. They appeared to be walking as if they wanted to look like they were not traveling together, when in fact they were traveling together. For example, when HELENA went into the restroom with his luggage, NUNEZ changed direction and walked toward the restroom, where he waited until HELENA left the restroom.

4. Shortly thereafter, when HELENA and NUNEZ were briefly separated, law enforcement agents approached HELENA and asked where he was traveling from, if he had his baggage tags, and if he had packed his luggage himself. HELENA stated, in sum and substance and in part, that he had flown from Los Angeles, had his baggage tags, and

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

had packed his luggage himself. Law enforcement agents asked HELENA if they could search his luggage. HELENA consented to the search and unlocked one of his bags. When he tried to unlock his other bag, he could not. HELENA stated, in sum and substance and in part, that he had forgotten the code for the lock on the second bag and told agents they should break open the bag.

5. Agents searched HELENA's luggage and found approximately 40 pounds of what appeared to be marijuana hidden inside the luggage. The substance from HELENA's luggage was field tested and tested positive for marijuana.

6. While agents were speaking with HELENA, another set of agents engaged NUNEZ in conversation. NUNEZ stated, in sum and substance and in part, that he had flown from Los Angeles, had his baggage tags, and had packed his luggage himself. Law enforcement agents asked NUNEZ if they could search his luggage. NUNEZ consented to the search and unlocked one of his bags. When he tried to unlock his other bag, he could not. NUNEZ stated, in sum and substance and in part, that he had forgotten the code for the lock on the second bag and told agents they should break open the bag.

7. Agents searched NUNEZ's luggage and found approximately 40 pounds of what appeared to be marijuana hidden inside the luggage. The substance from NUNEZ's luggage was field tested and tested positive for marijuana.

8. Both men were pleased under arrest.

9. Agents then determined that HELENA had been carrying one bag that had been checked in his own name and one bag that had been checked in NUNEZ's name, and that, similarly, NUNEZ had been carrying one bag that had been checked in his own name and one bag that had been checked in HELENA's name.

10. Both men were advised of their Miranda rights, which they acknowledged orally and in writing.[2] The defendants both agreed to waive those rights. After waiving their Miranda rights, HELENA and NUNEZ admitted that they knew there was marijuana in their luggage.

11. Based on my training and experience, 80 pounds of marijuana is more than an individual would normally possess for personal use. I therefore submit that there is probable cause to believe that HELENA and NUNEZ intended to distribute the marijuana that they knowingly possessed.

WHEREFORE, your deponent respectfully requests that the defendants SANTIAGO HELENA and RESNY NUNEZ be dealt with according to law.

TFO MARTIN K. MARINEZ
Task Force Officer
Drug Enforcement Administration

Sworn to before me by telephone this
12th day of May, 2020

THE HONORABLE ROBERT M. LEVY
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

---

[2] When agents first approached HELENA, the undersigned affiant began questioning him in English. At that time, HELENA indicated that he was more comfortable speaking in Spanish. Accordingly, and as I am fluent in Spanish, I conducted the remainder of HELENA's interview in Spanish. HELENA was also provided Spanish waiver and consent forms to review and sign.